UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET L. SHEPARD,

        Plaintiff,   Case No. 12-cv-14386

           Paul D. Borman
v.   United States District Judge

           Charles E. Binder
CAROLYN W. COLVIN,   United States Magistrate Judge

Acting Commissioner of
Social Security,

        Defendant.
_____/

OPINION AND ORDER (1) ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 18); (2) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS (ECF NO. 19); (3) GRANTING IN PART IN DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13); (4) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16); AND (5) REMANDING TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) FOR FURTHER PROCEEDINGS

On September 17, 2013, Magistrate Judge Charles E. Binder issued a Report and Recommendation to deny Plaintiff's motion for summary judgment, grant Defendant's motion for summary judgment and affirm the findings of the Commissioner in this Social Security Disability action. (ECF No. 18, Report and Recommendation.) Before the Court are Plaintiff's Objections to the Report and Recommendation. (ECF No. 19.) This Court reviews *de novo* the portions of the report and recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Having conducted a *de novo* review of the

1

parts of the Magistrate Judge's Report and Recommendation to which valid objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court ADOPTS IN PART AND REJECTS IN PART the Report and Recommendation, SUSTAINS IN PART AND OVERRULES IN PART Plaintiff's Objections and REMANDS this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

The Administrative Law Judge's ("ALJ") findings and pertinent portions of the Administrative Record are set forth in the Magistrate Judge's Report and Recommendation and the Court adopts them here. (ECF No. 14, Report and Recommendation 7-14.) Where necessary to address Plaintiff's Objections, the Court cites to other portions of the Administrative Record.

## II. STANDARD OF REVIEW

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions. Fed. R. Civ. P. 72(b); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). In reviewing the findings of the ALJ, the Court is limited to determining whether those findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Substantial evidence includes any relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402

F.3d 591, 595 (6th Cir. 2005)). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A non-specific objection, or one that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge and results in a duplication of effort on the part of the district court: "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Specific objections enable the Court to focus on the particular issues in contention. An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Id.* Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Id.*

## III.    ANALYSIS

Plaintiff advances five objections to the Magistrate Judge's Report and Recommendation, arguing that the ALJ's decision is not supported by substantial evidence and that the findings of the

Commissioner should not be affirmed. The Court will address the five objections in turn.

### A. Plaintiff's First Objection

Plaintiff objects to the Magistrate Judge's finding that prior to the June 30, 2007 date last insured, "there is no evidence of any mental health issues or treatment." In order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met certain statutory earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c-d). "If a claimant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Accordingly, evidence through the date last insured ("DLI") is considered relevant in making the disability determination. *Watters v. Comm'r of Soc. Sec. Admin.*, __F. App'x__, 2013 WL 3722099, at *1 (6th Cir. July 17, 2013) (relevant time period for determining eligibility for benefits runs from alleged onset date to date last insured).

There is no dispute that the DLI in this case was June 30, 2007 and that Plaintiff last worked in January, 2001. (Transcript of Administrative Record at 145) (hereinafter "Tr."). Termination of Plaintiff's employment was the result of an allegation against her for shoplifting, not the result of an injury or other allegedly disabling event. (Tr. 40-41.) Both the ALJ and the Magistrate Judge found it significant that the evidence of Plaintiff's alleged medically determinable impairment due to her mental health largely post-dated the DLI. The Court concurs with Plaintiff that the Magistrate Judge incorrectly observed in his Report and Recommendation that the "the first mention of any mental health symptoms in the record appears on September 30, 2008." This statement does not accurately reflect the record evidence in this case as there is "mention" of Plaintiff's depression in

4

medical records that pre-date the DLI. Importantly, however, the ALJ did recognize that there were treatment records relating to Plaintiff's depression prior to the DLI. (Tr. 22.) The ALJ concluded, however, that the limited records relating to Plaintiff's mental health that preceded the DLI were void of any restrictions resulting from those findings and the Court concludes that this finding is supported by substantial evidence. (Tr. 23.)

There are indications in the record that Plaintiff suffered from depression and anxiety as early as 2006, when it appears she began taking Prozac to treat her depression. (Tr. 420.) However, at this time it was also noted that all psychiatric indicators, judgment, orientation, memory and mood, were normal. (*Id.*) Throughout 2007, Plaintiff continued to be treated for depression, which was noted as "stable" with medication. (Tr. 424.) And shortly after the DLI, Plaintiff continued to be noted as stable on medication, Wellbutrin and Cymbalta, for her depression and anxiety. (Tr. 292.) There is no indication in any of the treatment notes preceding the DLI that Plaintiff's depression was in any way disabling. Indeed, the treatment notes indicate just the opposite, i.e. that Plaintiff's depression and anxiety pre-DLI were well controlled with medication.

As the ALJ observed in his decision, the record reflects that it was not until sometime in late 2008 that Plaintiff began actually treating with a psychologist for any alleged mental health issues. And this sudden increase in the intensity of her symptoms, it appears, was prompted in large part by Plaintiff's grief over the then-recent deaths of her mother and a friend for whom Plaintiff had acted as a caregiver and by accusations against her for shoplifting and for allegedly misusing funds of the friend for whom she provided care giver services. (Tr. 307, 560-77.) Furthermore, it is undisputed that it was not until sometime in late 2009 that Plaintiff, by her own description, "snapped," and was first diagnosed with bipolar disorder. (Tr. 381, 45-46.)

The timing of the onset of Plaintiff's allegedly disabling psychiatric condition was the subject of extensive questioning by the ALJ at the hearing on Plaintiff's claim. The ALJ concluded, after examining Plaintiff under oath about her mental health issues, and witnessing her demeanor, that Plaintiff's alleged mental impairments did not meet or equal the relevant listing criteria prior to the DLI in this case. This conclusion is supported by the 2011 statement of Plaintiff's psychiatric team, led by Dr. Tariq Abassi, MD, which stated that the earliest date that Plaintiff's psychological condition reached its then-present level of severity was October 7, 2008. (Tr. 604.) Thus, despite the fact that the June 7, 2011 statement regarding Plaintiff's psychological condition as of late 2009 purported to date back in time to the DLI, none of the evidence relied on in Dr. Abassi's report related to specific episodes or treatment notes that predated the DLI. Substantial evidence supported the ALJ's conclusion that the opinion of Dr. Abassi purporting to opine about the disabling nature of Plaintiff's mental condition prior to the date that he began her treatment was entitled to little weight "as the treatment notes of the claimant's treating physician during that timeframe are more credible regarding reported symptoms and limitations and are afforded more weight." (Tr. 27.)

Although post-DLI evidence can relate back in an appropriate case, substantial evidence supported the ALJ's decision here that Plaintiff was not disabled by her mental impairments prior to the DLI. *King v. Sec'y of Health and Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (substantial evidence supported ALJ's finding that claimant was not disabled by her musculoskeletal difficulties during her period of eligibility notwithstanding a diagnosis of degenerative disc disease shortly after the DLI). The Court concludes that, notwithstanding any alleged erroneous characterization of the record by the Magistrate Judge, there was substantial evidence in the record to support the ALJ's findings as to the severity of Plaintiff's alleged mental impairment prior to June

6

30, 2007.

### B. Plaintiff's Second Objection

Plaintiff next objects to the Magistrate Judge's conclusion that "Plaintiff's reliance on GAF scores is misplaced." The first documented GAF score in the record occurs sometime in 2008, after the DLI in this case. Accordingly, the GAF scores were not evidence regarding the extent of Plaintiff's mental impairments on or before June 30, 2007. Even if the GAF scores were temporally relevant, the ALJ was correct to accord them little weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable)); *Holzworth v. Comm'r Soc. Sec.*, No. 12-12635, 2013 WL 4496251, at *8 (E.D. Mich. Aug. 21, 2013) (citing *Kornecky* and holding that "the ALJ was not required to rely on plaintiff's GAF scores and he did not commit error by discounting them"); *Jordan v. Comm'r of Soc. Sec.*, No. 10-11833, 2011 WL 891198, at *5 (E.D. Mich. Jan. 14, 2011) (Morgan, MJ) (noting that GAF scores "are subjective opinions, representing a snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work"), adopted at 2011 WL 891240 (E.D. Mich. March 11, 2011). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal quotation marks and citation omitted). The Court concludes that the consideration given Plaintiff's GAF scores by the ALJ was well "within the zone of choice" available to him.

### C. Plaintiff's Third and Fourth Objections

Plaintiff next objects to the Magistrate Judge's recommendation that "although Plaintiff continued to have hand pain even after carpal tunnel release surgery . . . the ALJ's findings that these symptoms did not preclude her from working as of the date last insured are supported by substantial evidence." Although this is a close case, the Court concludes that this issue requires remand for further proceedings.

The record evidence demonstrates that prior to the DLI, and subsequent to her 1997-98 bilateral carpal tunnel surgery, Plaintiff experienced significant and ongoing pain and numbness in her hands and fingers. (Tr. 51-52.) Plaintiff testified at the hearing before the ALJ that she could not pick up anything heavy without dropping the object and that this had been going on "since 2007 or even before that." (Tr. 52.) She testified that she had difficulty buttoning buttons and tying shoes, that she could write with a large ink pen and could cook and bathe, with help on a bad day from her husband. (Tr. 53.)

Plaintiff's post-carpal tunnel release symptoms, which began in 1998 and continued through the DLI, are well supported by the medical findings in the record. The medical records from Plaintiff's treating physician preclude repetitive use of her hands due to "continuing severe problems of pain in both hands," (Tr. 244), and also indicate that Plaintiff's symptoms are aggravated by activity (Tr. 230). Plaintiff was restricted from "performing any activity with her hands on a continuous basis." (Tr. 258-59.) As early as February, 1999, Plaintiff was noted by her treating physician to be suffering from Reflex Sympathetic Dystrophy (RSD) in her right upper extremity secondary to her surgery for bilateral carpal tunnel release, as evidenced by a bone scan that was positive for RSD. (Tr. 227-30.) On August 1, 2000, Plaintiff was again diagnosed with RSD of

bilateral hands. (Tr. 250.) On August 3, 2000, Plaintiff's treating physician noted that an EMG performed on June 9, 2000 confirmed a moderate to severe carpal tunnel syndrome which had progressed since November, 1999. (Tr. 249.) Plaintiff was advised to take a leave of absence from work to rest both wrists. (*Id*.) On October 24, 2000, Plaintiff was advised to return to work with the following restrictions: "[A] sitting job that she can get up and move about frequently. She can't do repetitive activities with repetitive use of her hands. She has continuing severe problems of pain in both hands, 9 on a 0 to 10 scale." (Tr. 244.) On November 21, 2000, treatment notes indicate a past medical history of "RSD, pain in both hands," and further state that on her "previous visit, 10/24/00, she was allowed to return to work with significant amount of restrictions including no lifting over ten pounds and doing limited activities, not continuously repetitious." (Tr. 241.) The recommendation on November 21, 2000 was that Plaintiff "continue on her present restrictions." (Tr. 242.)

Throughout this period of time, as the ALJ noted in his opinion, Plaintiff was treated with and responded somewhat to Neurontin. (Exhibit 1F; Tr. 25.) The ALJ found that although restrictions on repetitive use were noted, "there is no evidence that such restrictions were permanent in nature or were intended to be in place indefinitely." (Tr. 25.) Nor, however, does the ALJ cite to any evidence that Plaintiff's issues with bilateral wrist pain and RSD in any way resolved. Indeed, the Commissioner concedes in its summary judgment brief that "[t]he medical records documented that Plaintiff could not repetitively use her hands . . . ." (ECF No. 16, Def.'s Mot. Summ. Judg. 8.) The Commissioner argues, however, the ALJ adequately accounted for this limitation in his RFC. The Court disagrees.

It is well established that "[i]n order for a vocational expert's testimony in response to a

hypothetical to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The ALJ concluded in the RFC that Plaintiff could "frequently but not constantly handle, finger, feel with the right or left upper extremity." At the hearing on Plaintiff's claims, upon questioning by Plaintiff's attorney, the vocational expert (VE) testified that if Plaintiff were limited to less than occasionally using her hands, this would preclude her from performing any of the jobs identified by the VE in response to the ALJ's hypothetical. In the context of handling, fingering and feeling with the hands, it is difficult to understand how an action can be done frequently (defined as up to two-thirds of the workday) but at the same time be done less than occasionally and not repetitively. If one handles, fingers and feels with their hands two-thirds of the work day, they will perform hand and finger motions (although perhaps not the same hand and finger motion) on a repetitive basis. In other words, for example, while they may not necessarily use the forefinger on their right hand repetitively, if the are fingering, handling and feeling two-thirds of the day, they will necessarily repeatedly be using their hands and fingers in some fashion.

"Most unskilled, sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions . . . ." (SSR 83-10, 1983 WL 31251 (S.S.A.).) At the very least, the ALJ's RFC and hypothetical to the VE failed to adequately reconcile the conceded restriction on repetitive use of the hands (conceded by the Commissioner as medically documented in this case) with an RFC that included frequent handling, fingering and feeling. While such a reconciliation may be possible, it is certainly not intuitive and it was not articulated by the ALJ in his decision. Accordingly, this matter must be remanded to the Commissioner to determine whether the limitation on repetitive use

of the hands, conceded by the Commissioner in this case, necessarily precludes frequent handling, fingering and feeling which the ALJ allowed for in his RFC and hypothetical. Remand is particularly appropriate in view of the VE's testimony that if Plaintiff could less than occasionally handle, finger and feel with her hands, all of the jobs that were identified as otherwise available to Plaintiff would be unavailable.

Plaintiff also objects that the ALJ failed to properly acknowledge, evaluate and account for Plaintiff's RSD. The record evidence indicates that prior to the DLI, as a result of her carpal tunnel release surgeries, Plaintiff suffered from medically documented RSD. A bone scan and EMG nerve studies revealed moderate to severe RSD. (Tr. 228-29, 271-76.) RSD is recognized as a medically determinable condition. SSR 03-2p, 2013 WL 2239917 (S.S.A. 2003). Although the ALJ recognized that Plaintiff had been treating for RSD, Tr. 25, the ALJ never engaged in evaluation of Plaintiff's RSD under SSR 03-2p. "Because the ALJ neither addressed Plaintiff's RSDS specifically nor cited to SSR 03–2p, the Court is uncertain whether the ALJ was aware of the characteristics of this "unique clinical syndrome" and the Administration's policy for evaluating claims based on RSDS. See SSR 03–2p." *Volk v. Astrue*, No. 11-533, 2012 WL 4466480, at *5 (M.D. Fla. Sept. 27, 2012). On remand, the ALJ shall evaluate Plaintiff's RSD in accordance with SSR 03-2p and reconsider the RFC in light of his findings.

### 5. Plaintiff's Fifth Objection

Finally, Plaintiff objects that the RFC and hypothetical given by the ALJ limiting Plaintiff to "simple unskilled work with an SVP rating of 1 or 2 . . . requir[ing] brief and superficial contact with the general public . . . and [requiring] routine work that does not require changes or adaptations in work settings or duties more than once a month," failed to account for Plaintiff's moderate

11

deficiencies in concentration, persistence and pace. (Tr. 24.) The ALJ did recognize that the pre-June 30, 2007 record evidence supported the existence of moderate limitations in regard to concentration, persistence or pace: "With regard to concentration, persistence or pace, the claimant had moderate difficulties [including] difficulty handling stress and changes in routine . . . and fear over little things, including being alone. The record seems to support the existence of these limitations pre-June 2007." (Tr. 23-24.) Accordingly, the ALJ added the limitations permitting only brief contact with the public and minimal changes in routine.

In an appropriate case, "hypothetical restrictions of "simple" or "low-stress" work [may] not sufficiently incorporate [a] claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace." *Ealy*, 594 F.3d at 517 (internal citation and quotation marks omitted). However, the ALJ in this case went beyond restricting Plaintiff to "simple" work, adding restrictions as to exposure to the public and changes in routine. Plaintiff cites no medical evidence requiring specific speed or pace-based restrictions or any restrictions beyond those accounted for in the ALJ's hypothetical, i.e. brief, superficial contact with the general public and "routine work that does not require change or adaptations in work settings or duties more than once per month." (Tr. 24.) The ALJ's RFC limiting Plaintiff to simple, unskilled work with the additional limitations that Plaintiff have only superficial contact with the public and routine work requiring infrequent change addressed Plaintiff's "stressors" that the ALJ found to be credible and was within the "zone of choice" and supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court:

(1) ADOPTS IN PARTS AND REJECTS IN PART the Magistrate Judge's Report and Recommendation;

  (2)  SUSTAINS IN PART AND OVERRULES IN PART Plaintiff's Objections;

  (3)  GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment;

  (4)  GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment; and

  (5)  REMANDS this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

            s/Paul D. Borman  
            PAUL D. BORMAN  
            UNITED STATES DISTRICT JUDGE

Dated: November 18, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 18, 2013.

            s/Deborah Tofil  
            Case Manager