## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARGARET L. SHEPARD,

 CASE NO. 2:12-cv-14386

     *Plaintiff*,

v.

 DISTRICT JUDGE PAUL D. BORMAN
 MAGISTRATE JUDGE PATRICIA T. MORRIS

CAROLYN W. COLVIN,
Commissioner of Social Security,

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S APPLICATION SEEKING AN ATTORNEY FEE PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT
### (Doc. 21)

## I.  RECOMMENDATION

Two issues are before the Court on Plaintiff's request for attorney fees. First, was the Commissioner substantially justified in analyzing Plaintiff's reflex sympathetic dystrophy syndrome ("RSD") and in believing that a "frequent" hand-use limitation addressed Plaintiff's "repetitive" hand-use problems? Second, is Plaintiff's specific fee request reasonable? In particular, did she adequately support her request for a cost of living increase above the statutory hourly rate and were the total hours worked reasonable.

I suggest that the Commissioner was substantially justified because the errors were based on procedural failures to explain her reasoning rather than substantive violations of the regulations or groundless analysis. However, I also conclude that if the Court finds the Commissioner's position was not substantially justified, the fee request was reasonable. For these reasons, I

**RECOMMEND** that Plaintiff's Motion Seeking an Attorney Fee Pursuant to the Equal Access to Justice Act be **DENIED**.

## II.   REPORT

### A.   Introduction and Procedural Background

United States District Judge Paul Borman referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A),.[1] (Doc. 21.) Plaintiff seeks attorney fees under the Equal Access to Justice Act (hereafter "EAJA"), 28 U.S.C. § 2412. Attorney Randall Phillips has represented Plaintiff throughout the current case. On October 3, 2012, he filed Plaintiff's complaint seeking judicial review of a decision by the Defendant Commissioner denying Plaintiff's claim for benefits. (Doc. 1.) Magistrate Judge Charles Binder issued a Report and Recommendation suggesting that Judge Borman deny Plaintiff's motion for summary judgment and grant Defendant's. (Doc. 18.)

On November 18, 2013, Judge Borman adopted that Recommendation in part, overruling three of Plaintiff's five objections. (Doc. 20 at 12-13.) However, he found that two objections had merit. (*Id.* at 8-11.) First, recognizing it was "close case," the Court found that the Administrative Law Judge ("ALJ") did not properly analyze hand and wrist limitations. (*Id.* at 8.) The ALJ acknowledged Plaintiff's restrictions on repetitive hand use, but found they were not permanent. (Transcript, Doc. 9 at 25.) Yet, the ALJ did not explain why he thought these problems had resolved, (Doc. 20 at 9), and the Commissioner later conceded in court that "[t]he medical records

---

[1] A magistrate judge may not hear and determine a post-judgment motion for fees under 28 U.S.C. § 636(b)(1)(A), because it is not a "pretrial matter," and it is considered "dispositive of a claim." Therefore, I must proceed by Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993).

documented that Plaintiff could not repetitively use her hands . . . ." (Doc. 16 at 8.) The RFC did not account for these limitations. (Doc. 20 at 9-11.) The evidence, which the ALJ failed to address, suggested limits in repetitive hand movements. (*Id.* at 9-10.) The RFC, in contrast, limited Plaintiff to frequent hand movements. (*Id.* at 10; Tr. at 24.) Judge Borman noted that frequent movements seemed to entail repetitive motions, but remanded to allow the ALJ an opportunity to reconcile repetitive use restrictions with the frequency limitation. (Doc. 20 at 10-11.) "While such a reconciliation may be possible, it is certainly not intuitive and it was not articulated by the ALJ in his decision." (*Id.* at 10.) Specifically, on remand, the ALJ was to determine whether a limitation on repetitive use "necessarily preclude[d] frequent handling, fingering and feeling which the ALJ allowed for in his RFC and hypothetical" to the vocational expert. (*Id.* at 10-11.)

The ALJ's second error concerned Plaintiff's RSD. Although the ALJ recognized this impairment, he "never engaged in evaluation of Plaintiff's RSD under SSR 03-2p." (*Id.* at 11.) *See* SSR 03-2p, 2003 WL 22399117. Consequently, Judge Borman also instructed the ALJ to evaluate the condition "in accordance with SSR 03-2p and reconsider the RFC in light of his findings." (Doc. 20 at 11.)

Plaintiff filed the present motion for fees on February 17, 2014. (Doc. 21.) The motion seeks a total of $8,157.35 in attorney fees, at an hourly rate of $187.02, along with $350.00 in costs for the court filing fee. (*Id.* at 2.) The Defendant Commissioner filed a response opposing the motion, (Doc. 22), and counsel for Plaintiff filed a reply. (Doc. 25.) Plaintiff also requests $2,917.51 for drafting the reply, calculated at the same $187.02 hourly rate. (*Id.* at 18.) Finally, Defendant filed a sur reply, and the matters are now ready for Report and Recommendation.

### B.      EAJA Requirements

An application for attorney fees under the EAJA, including an itemized justification for the amount requested, must be filed within 30 days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(A). In addition, a claimant must be an eligible party; that is, one "whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

After eligibility, three conditions must be met in order to recover attorney fees under the EAJA: (1) the claimant must be a prevailing party; (2) the government's position must be without substantial justification; and (3) there must be no special circumstances which would warrant a denial of fees. *Ratliff v. Commissioner of Soc. Sec.*, 465 F. App'x 459, 460 (6th Cir. 2012); *Marshall v. Commissioner*, 444 F.3d 837, 840 (6th Cir. 2006).

With regard to the first condition, the Supreme Court has held that a party who obtains a Sentence Four remand is a prevailing party eligible for a judgment awarding costs, attorney fees, and expenses under the EAJA. *Shalala v. Schaefer*, 509 U.S. 292, 301-02 (1993); *Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012). The second and third conditions stem from the EAJA's provision that a litigant may not recover attorney fees from the United States if the government's position was substantially justified. The statute reads in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . ., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The government bears the burden of demonstrating substantial justification. *E.W. Grobbel Sons, Inc. v. Nat'l Labor Relations Bd.*, 176 F.3d 875, 878 (6th Cir. 1999).

**C.     Analysis and Conclusions**

**1.     Prevailing Party, Timeliness, and Eligibility**

Since Plaintiff in this case obtained a Sentence Four remand, I suggest that she is a "prevailing party." *See Schaefer*, 509 U.S. at 301-02. An EAJA application for fees must be filed "within thirty days of final judgment in the action . . . ." 28 U.S.C. § 2412(d)(1)(B). A judgment becomes final sixty days after judgment is entered, provided that no notice of appeal or other motion under Rules 59 or 60 of the Federal Rules of Civil Procedure has been filed in the meantime. *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 131, n.3 (6th Cir. 2007); *Najor v. Sec'y of Health & Human Servs.*, 675 F. Supp. 379 (E.D. Mich. 1987). Thus, the thirty-day window begins sixty days after the opinion.

The judgment in this case was entered on November 18, 2013, and became final sixty days later. The instant petition was filed on February 17, 2014, within the thirty-day period. Accordingly, I conclude that Plaintiff counsel's application is timely filed and that the record contains no indication that Plaintiff is not a properly "eligible party" within the meaning of the EAJA.

**2.     Substantial Justification**

*a.     Arguments*

Plaintiff's initial brief does not develop an intricate argument that the Commissioner lacked substantial justification. (Doc. 21 at 2-4.) Instead, it recounts the course of litigation and Judge Borman's opinion explaining the ALJ's flawed analysis. (*Id.*) Plaintiff did not need to do more at this point, as the Commissioner carries the justification burden. *E.W. Grobbel Sons*, 176 F.3d at 878. Defendant's reply brief presses numerous arguments to show substantial justification. (Doc.

22 at 2-11.) First, the Commissioner stresses that substantial evidence and substantial justification are different concepts. (*Id.* at 3.) The Commissioner could lose even if her position was substantially justified. (*Id.* (citing *Pierce v. Underwood,* 487 U.S. 552, 569 (1988)). Moreover, the court must consider the Commissioner's entire position "and not focus on isolated aspects of the . . . position." (*Id.* at 4.)

Launching into the analysis, Defendant points out that Magistrate Judge Binder's order, upholding the Commissioner's actions, "reflects that reasonable people could differ as to the propriety of the contested action." (*Id.* at 4-5.) That Judge Borman rejected most of Plaintiff's objections to the Report is also "an important consideration," according to Defendant. (*Id.* at 5-6.) A string of cases from this Circuit suggest that the Commissioner's success on many, but not all, issues indicates it had a substantially justified position. (*Id.* (citing *Green v. Comm'r of Soc. Sec.*, 52 F. App'x 758, 759 (6th Cir. 2002); *Cunningham v. Halter*, 25 F. App'x 221 (6th Cir. 2001); *Glenn v. Comm'r of Soc. Sec.*, No. 12-11433, 2013 WL 5587605, at *3 (E.D. Mich. Oct. 10, 2013), *rev'd* 763 F.3d 494 (6th Cir. Aug. 13, 2014); *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 3497682, at *3 (E.D. Mich. July 11, 2013)).) Defendant also cites Seventh Circuit authority for the same proposition. (*Id.* at 7-8 (citing *Bassett v. Astrue*, 641 F.3d 857, 860 (7th Cir. 2011); *Stewart v. Astrue*, 561 F.3d 679, 683-84 (7th Cir. 2009); *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996)).

Even where Plaintiff prevailed, the case was "close," in Judge Borman's estimation.(*Id.* at 8.) Defendant asserts that the decision to remand did not explicitly "find that the ALJ's decision lacked supporting substantial evidence," but instead sent the case back to the ALJ for clearer articulation of his findings. (*Id.* at 9.) Additionally, the ALJ offered some explanation for his

decision regarding Plaintiff's hand problems, noting evidence that medication helped and she had "good" arm strength.(*Id.* at 8-9 (quoting (Tr. at 25)).)

Plaintiff's reply first quibbles with Defendant's use of non-precedential authority to support the "substantial justification" claim. (Doc. 25 at 1-2.) Every published case Defendant cites came from outside this Circuit, according to Plaintiff. (*Id.* at 1.) Moreover, the Magistrate's Recommendation alone cannot demonstrate the Commissioner's reasonableness.(*Id.* at 2.) As the Supreme Court stated, "[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.'" *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (quoting *Pierce*, 487 U.S. at 569). In *Howard*, the Sixth Circuit reversed and granted fees because the district court "did little more than note that the [ALJ], magistrate and itself had all agreed with the denial of the disability benefits." *Id.*

Plaintiff then attacks both the ALJ's and the Commissioner's errors, first noting that the equating "frequent" and "repetitive" limitations was "'certainly not intuitive.'" (Doc. 25 at 3 (quoting (Doc. 20 at 10)).) The ALJ's failure to analyze the RSD under SSR 03-2p violated agency procedures and the Commissioner's litigation position that the ALJ accounted for this impairment mischaracterizes the ALJ's position. (*Id.*) Next, Plaintiff states that the Commissioner was simply wrong when asserting that Judge Borman "'did not find that the ALJ's decision lacked supporting substantial evidence.'" (*Id.* (quoting (Doc. 22 at 9)).) Of course he made this finding, Plaintiff reasons, otherwise he could not have remanded the case. (*Id.* at 3-4.) Plaintiff then discusses Ninth Circuit case law that has found a close congruence between the substantial evidence and the substantial justification standards. (*Id.* at 4-6 (citing *Campbell v. Astrue*, 736 F.3d 867 (9th Cir. 2013); *Meier v. Colvin*, 727 F.3d 867, 872 (9th Cir. 2013)).) That is, a finding that the ALJ failed

7

the substantial evidence test provides "'a strong indication that the "position of the United States" . . . was not substantially justified.'" *Meier*, 727 F.3d at 872 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005)).

Finally, Defendant's sur reply objects that Plaintiff's proposed framework "would essentially transform the substantial justification standard into a prevailing party standard." (Doc. 27 at 8.) Plaintiff seems to conflate the substantial evidence and substantial justification standards, and does so based on Ninth Circuit law. (*Id.*) The Sixth Circuit, in contrast, has indicated there is more room between the two standards. (*Id.*) Additionally, Defendant clarifies her statements about Judge Borman's opinion. (*Id.* at 7.) Judge Borman's characterization of the case as "'close' . . . does not reflect that he believed that [the] ALJ's decision was completely unreasonable [or] unjustified." (*Id.* (quoting (Doc. 20 at 8)).)[2]

> ### b. *Governing Law*

The primary dispute between the parties is whether the Commissioner's position was "substantially justified." The government's "position" includes both its underlying action and its litigation position. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(D). *See also Noble v. Barnhart*, 230 F. App'x 517, 519 (6th Cir. 2007); *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994). The government's loss raises no presumption that its position was not substantially justified. *United States v. Real Property Located at 2323 Charms Road*, 946 F.2d 437, 440 (6th Cir. 1991). Courts must be careful to maintain the distinction between a lack of substantial evidence, which

---

[2] The parties also address whether, for purposes of the EAJA, the Commissioner's position includes the ALJ's underlying decision. (Doc. 25 at 4-5); (Doc. 27 at 6-7.) The cases they discuss on this point come from the Ninth Circuit. It is not entirely clear that the Commissioner disputes the argument that both the ALJ and the Commissioner's position in court need substantial justification. However, in the Sixth Circuit, both are part of the Commissioner's "position." *Noble v. Barnhart*, 41 F.3d 259, 519 (6th Cir. 2007) ("When evaluating the Commissioner's position, we consider the ALJ's decision as part of the Commissioner's pre-litigation conduct.").

results in a remand to the Commissioner, and a lack of substantial justification, which results in an award of attorney's fees. *Olive v. Comm'r of Soc. Sec.*, 534 F. Supp. 2d 756, 758 (N.D. Ohio 2008).

In *Pierce v. Underwood,* 487 U.S. at 563, the Supreme Court took pains to define "substantial justification." The Court rejected the demanding interpretation of "justified to a high degree," and approved formulations such as "[existence of] a genuine dispute," "if reasonable people could differ as to [the appropriateness of the contested action]," "justified to a degree that could satisfy a reasonable person," and "reasonable basis both in law and fact." *Id.* at 565. The Court specifically rejected legislative history suggesting that "the test must be more than mere reasonableness." *Id.* at 566 (quoting H.R. REP. NO. 99-120, at 9 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 138).

Under these standards, the failure of the government to entirely prevail in this case does not in and of itself constitute a lack of substantial justification for its position. *See United States v. Yoffe*, 775 F.2d 447 (1st Cir. 1985). Indeed, "Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case . . . .'" *Scarborough v. Principi,* 541 U.S. 401, 415 (2004) (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003)). Thus, the lack of substantial evidence supporting the Commissioner's position does not mean the decision lacked substantial justification for purposes of attorney fee awards under the EAJA. *See Hull v. Bowen*, 748 F. Supp. 514 (N.D. Ohio 1990). An incorrect decision can be substantially justified if a reasonable person "'could think it correct.'" *Noble*, 230 F. App'x at 519 (quoting *Pierce*, 487 U.S. at 566 n.2).

Moreover, the ALJ's failure to articulate her reasoning or explain the evidence "does not automatically mean the Commissioner's decision to defend the ALJ's decision to deny benefits was unreasonable," and thus unjustified. *Anderson v. Comm'r of Soc. Sec.*, 198 F.3d 244, 1999 WL 1045072, at *4 (6th Cir. Nov. 12, 1999) (unpublished table decision). Thus, fees are not automatically awarded where the remand resulted from the ALJ's failure to articulate the analysis rather than, for example, the "overwhelming evidence of disability . . . ." *Kinsora v. Comm'r of Soc. Sec.*, No. 09-11507, 2011 WL 2173909, at *4 (E.D. Mich. Apr. 18, 2011), *Report & Recommendation adopted by* 2011 WL 2173829, at *1 (E.D. Mich. June 2, 2011). A cursory analysis of an important issue "usually will not be enough to poison the opinion–or the commissioner's defense of the opinion." *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011). Instead, " it typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified–something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis." *Id.*

In determining a prevailing claimant's entitlement to EAJA fees, the "clarity of existing law is an important factor in determining whether the position of the Commissioner was substantially justified." *Spruil v. Bowen*, 691 F. Supp. 302 (M.D. Fla. 1988). Also, where the evidence is equivocal or highly disputed, the Commissioner's position is more likely to be substantially justified within the meaning of the EAJA. *Gowen v. Bowen*, 855 F.2d 613 (8th Cir. 1988); *Andrews v. Bowen*, 848 F.2d 98 (7th Cir. 1988). The Commissioner's failure to follow applicable regulations undermines her justification and entitles Plaintiff's counsel to an EAJA attorney fee award. *Hudson v. Sec'y of Health & Human Servs.*, 839 F.2d 1453 (11th Cir. 1988). Similarly, the

10

failure of the Commissioner to follow clearly established circuit court precedent renders the Commissioner's position not substantially justified. *Fraction v. Bowen*, 859 F.2d 574 (8th Cir. 1988). However, the Commissioner's position can be substantially justified despite "deficiencies in the ALJ's analysis of the treating physician's opinion" where the evidence sheds sufficient doubt on the plaintiff's disability. *Ratliff*, 465 F. App'x at 460 (citing *Anderson*, 1999 WL 1045072, at *4).

       *c.*    *Analysis*

I will first address Defendant's broad contention that when analyzing substantial justification the Court should look favorably on the Commissioner's successful arguments against several of Plaintiff's objections. (Doc. 22 at 4-8); (Doc. 27 at 4-5.) Defendant thinks that her success on multiple issues "is an important consideration" in determining that its position was substantially justified. (Doc. 27 at 4.) However, the rationale for this opinion has been recently undercut somewhat by the Sixth Circuit. Defendant correctly notes that in *Cunningham v. Halter*, that court denied EAJA fees, in part because the Commissioner prevailed in many issues during the district court's review of the ALJ decision. 25 F. App'x at 223. Similarly, in *Green v. Commissioner of Social Security*, the court again referenced the Commissioner's success on various issues, despite the partial remand, as evidence that her position was justified. 52 F. App'x at 759. District courts have used this factor as well. *See Harris*, 2013 WL 3497682, at *3 ("While Harris sought remand on several substantive grounds, the case was remanded for one reason alone . . . ."). The Supreme Court has also instructed courts to examine the Commissioner's position "as an inclusive whole," *Commissioner, Immigration & Naturalization Serv.*, 496 U.S. 154, 161-62

11

(1990), and noted that a "string of successes" by the Commissioner could indicate its position was justified. *Pierce*, 487 U.S. at 569

After the parties in the present case filed their briefs, the Sixth Circuit clarified the persuasiveness of this factor in *Glenn v. Commissioner of Social Security*, 763 F.3d 494 (6th Cir. 2014). The court denied that the substantial justification standard could be reduced "to a matter of comparing the number of successful claims to unsuccessful claims in a single appeal." *Id.* at 498. Instead, the focus should remain on whether the Commissioner's position was reasonable and "supported by law and fact." *Id.* at 498-98. There, the "inclusion of three unsuccessful claims in [the claimant's] petition for review did not undermine the inevitability of remand," particularly in light of the five reversible errors the ALJ committed. *Id.*

Thus, the value of the Commissioner's success rate will generally depend on the facts. In many cases, it may provide a faulty heuristic device that fails to capture the case's underlying dynamics. On one hand, it has intuitive appeal. It seems unlikely, ex ante, that an ALJ who could provide cogent analysis at steps one through four would completely botch step five. A more substantial reason why it may sometimes present a workable metric is because the discrete issues presented to the ALJ or in court often overlap. Thus, the ALJ's analysis across different areas often overlaps, such that sound analysis in one claim indicates the same in another. For example, the ALJ's credibility analysis must consider, among other factors, the frequency of pain and the treatments employed .20 C.F.R. § 404.1529(c)(3). Likewise the analysis of medical opinions must also assess treatment methodologies. 20 C.F.R. § 404.1527(c). Thus, if the parties dispute both issues, the fact that the Commissioner prevailed in one might suggest she was substantially

justified in the other if the dispute centers on an element common to both, such as how the ALJ handled the treatment evidence.

On the other hand, without such close scrutiny of the separate issues to see if they had elements in common–such as review of medical treatments–the Commissioner's success in one issue does not seem helpful in uncovering whether she was substantially justified on any other particular point. Stating the basic assumption of this device displays its deficiencies. For example, in this case one of the contested matters is whether the ALJ properly accounted for Plaintiff's hand restrictions. It would seem clunky and unconvincing to assert that, because the ALJ was correct in according Plaintiff's mental functioning scores little weight, (Doc. 20 at 7), he was thus also substantially justified in thinking that limiting Plaintiff to frequent hand movements addressed his restrictions on repetitive movements. One conclusion does not follow strictly from the next.

Consequently, the Commissioner's success in certain claims is generally relevant to the justification analysis on other claims only if they share common elements. Simply counting wins and losses imposes a penalty on claimants who bring multiple claims when, in fact, they have ultimately prevailed. It may prove better strategy to not "multiply[] assignments of error," Robert H. Jackson, *Advocacy Before the United States Supreme Court*, 37 Cornell L. Rev. 1, 5 (1951), but instead "strike the jugular and let the rest go." Oliver Wendell Holmes, Jr., Answer to Resolutions of the Bar (Nov. 25, 1899), *reprinted in The Essential Holmes* 209, 210 (Richard A. Posner, ed., 1992). But it suffices for the EAJA if the Plaintiff brings one basis for remand that the Commissioner cannot substantially justify, regardless of her other arguments. *See Morgan v. Comm'r of Soc. Sec.*, No. 12-12071, 2014 WL 5023455, at *3 (E.D. Mich. Oct. 8, 2014) (adopting

Report & Recommendation) ("The salient question is whether the Commissioner's position on the one successful claim was substantially justified.").

This analysis does not suggest that the Commissioner's litigation position here lacks substantial justification. The case law instead indicates that the Commissioner's relative success is a valid consideration, despite its deficiencies. And, as noted, the Sixth Circuit's most recent pronouncement questioning this factor came after the parties had filed their briefs.

<em>i.</em>     <em>The ALJ's RSD Analysis</em>

I suggest that the ALJ's errors in the RSD analysis were more akin to articulation errors than substantive violations of the regulations or complete failures to assemble and analyze the evidence. Thus, the ALJ's analysis, and the Commissioner's defense of it, were substantially justified. The issue is close. From one perspective, the ALJ's failure to address SSR 03-2p could be seen as a direct contravention of SSR 03-2p. Disregarding regulations, or rulings, often deprives the Commissioner of substantial justification. *See Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) ("'[F]inding that an agency's position was substantially justified when the agency's position was based on violations of . . . the agency's own regulations, constitutes an abuse of discretion.'" (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996))); *Crooks v. Comm'r of Soc. Sec.*, No. 12-13365, 2014 WL 3400697, at *4 (E.D. Mich. July 10, 2014) (adopting Report & Recommendation) (finding that Commissioner was not substantially justified where the ALJ, among other errors, violated a ruling). Here, the ALJ mentioned Plaintiff's RSD, but did not show familiarity with SSR 03-2p, which explains that impairment. And, in fact, at least one court in this District has found that failing to properly apply SSR 03-2p rendered the ALJ's decision not substantially justified. *See Fauss-Miller v. Comm'r of Soc. Sec.*, No. 06-12079,

14

2008 WL 2415432, at *2 (E.D. Mich. June 12, 2008). However, violations are not always grounds for rejecting the Commissioner's justifications. In *Olive v. Commissioner of Social Security*, the court denied that the ALJ's violation of a regulation deprived the Commissioner of justification where the "violation was a mere 'articulation error' . . . [that did] not justify recovery of attorney's fees under the EAJA . . . ." 534 F. Supp. 2d at 758.

Whether the ALJ's failure to adequately address this Ruling is mere "articulation error" depends, of course, on the depth of the mistake. Cases outside the EAJA context are instructive. Harmless articulation errors concerning SSR 03-2p have occurred when, for example, the ALJ did not expressly include RSD as an impairment but nonetheless indicated he considered it. *Henderson v. Comm'r of Soc. Sec.*, No. 3:12-cv-02794, 2014 WL 1117821, at *4 (N.D. Ohio Mar. 14, 2014). In contrast, if the mistake infected other aspects in the analysis, the error is not simply a failure to provide a full and clear explanation. In one case, the ALJ committed reversible error by devaluing opinion testimony due to transient treatment success. *Robinson v. Comm'r of Soc. Sec.*, No. C-1-06-848, 2009 WL 3124217, at *13 (S.D. Ohio Sept. 29, 2009) (adopting Report & Recommendation). This was an improper grounds to reject the opinions because SSR 03-2p instructs that conflicting evidence often occurs "in cases of RSD[] due to the transitory nature of its objective findings . . . ." *Id.* (quoting SSR 03-2p, 2003 WL 22399117, at *4).

Failing to mention RSD at all may merit reversal where it shows that the ALJ misunderstood the nature of the impairment, thus skewing the analysis of other evidence. *Allshouse v. Comm'r of Soc. Sec.*, No. 07-12516, 2009 WL 4884968, at *3 (E.D. Mich. Dec. 11, 2009) (adopting Report & Recommendation). The same type of error occurred in *Fauss-Miller v. Commissioner of Social Security*, causing the court to reject the Commissioner's substantial

justification arguments. 2008 WL 2415432, at *2. There, the ALJ's botched SSR 03-2p analysis led to "an incorrect assessment of the Plaintiff's treating physician and an inadequate determination of the Plaintiff's credibility," and a "failure to properly consider third-party information . . . ." *Id.*

Here, the ALJ's error does not have a similarly deleterious effect. Comparing his decision with the content of the Ruling shows that, while he may have been unfamiliar with the precise contours of RSD, he did not flout the Ruling. Instead, the ALJ's failure to discuss the Ruling left the Court "'uncertain whether the ALJ was aware of the characteristics of this 'unique clinical syndrome' and the Administration's policy for evaluating claims based on [RSD].'" (Doc. 20 at 11 (quoting *Volk v. Astrue*, No. 11-533, 2012 WL 4466480, at *5 (M.D. Fla. Sept. 27, 2012)).) This appears to signify an "articulation error," remediable by clarifying and explaining the analysis rather than completely restructuring it.

First, SSR 03-2p does not prescribe a specific balancing or multi-part test for anything other than establishing whether RSD is a medically determinable impairment suffered by the claimant. 2003 WL 22399117, at *4. The rest of the Ruling provides background information on RSD and broad guidelines on how this information might affect the analysis. It notes that conflicting evidence is "not unusual" and, consequently, recontacting the medical sources for clarification might be necessary. *Id.* at *4. Moreover, it recites regulations on the deference owed to treating sources. *Id.* ALJs are then advised to "carefully consider[]" the effects of chronic pain and any medications. *Id.* at *5. The Ruling goes on to state that pain is "an expected symptom in this disorder," thus the adjudicator "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms" and the individual's credibility. *Id.* at *6.

16

These statements condense the general law applicable to all disability adjudications. The peculiarities of RSD are that it can cause a "degree of pain . . . out of proportion to the severity of the injury . . . ." *Id.* at *1. As a result, medical opinions may be particularly useful by allowing "adjudicators to draw conclusions about the severity of the impairment(s)" through comparisons between the individual's status before and after the onset of RSD. *Id.* at *7. Third-party information might also become helpful in these circumstances. *Id.* Additionally, "medical signs or laboratory findings . . . [are] critical in establishing the presence of a medically determinable impairment" of RSD. *Id.* at *4.)

The ALJ here did not clearly contradict the Ruling. Rather, he seemed unaware of it, raising the possibility that he would come to a different conclusion once he consulted it. The ALJ mentioned RSD in his decision, including it as a severe impairment, (Tr. at 22), and addressing it in his analysis, (Tr. at 25). Though perhaps unfamiliar with the impairments particular manifestations–as laid out in the Ruling–nothing indicates he badly mismanaged the analysis as a result. He did not, for example, overemphasize any evidence of improvement or pain fluctuations to undercut a medical opinion or cast doubt on Plaintiff's credibility. *Cf. Robinson*, 2009 WL 3124217, at *13; *Fauss-Miller*, 2008 WL 2415432, at *2. Had he done so, the decision would have more clearly varied from SSR 03-2p. His credibility analysis perhaps could change on remand, as RSD produces disproportionate pain. But the ALJ did acknowledge Plaintiff's self-reported pain levels. (Tr. at 25.)

One aspect that might turn out differently on remand is the ALJ's observation that there was "no evidence" that restrictions on Plaintiff's hand movements, established in 2000, (Tr. at 242, 244), were "permanent in nature . . . ." (Tr. at 25.) As Judge Borman noted, the ALJ did not

assemble any evidence that Plaintiff improved after this point. (Doc. 20 at 9.) The Ruling makes clear that any potential improvement would not necessarily negate disabling pain. SSR 03-2p, 2003 WL 22399117, at *5. But the ALJ might also, with elaboration, reach the same result as before. The problem with his decision was it left the Court unclear whether he considered SSR 03-2p. He can remedy this with clarification and, consequently, the error stemmed from inarticulation. This does not deprive the Commissioner of substantial justification.

In court, the Commissioner defended the action by asserting that the ALJ did not have to explicitly cite the Ruling and, in any case, he considered RSD and crafted sufficient limitations in the RFC. (Doc. 16 at 5.) This sufficiently mirrors the ALJ's analysis and its errors. Thus, the Commissioner did not stake out any new positions that lack substantial justification.

### ii.     *Repetitive and Frequent Restrictions*

The ALJ's other mistake was not so serious that the Plaintiff should receive fees. If anything, this issue was more clearly an "articulation error." The ALJ's belief that a limitation to frequent hand use accounted for Plaintiff's "repetitive" hand use problems was reasonable even if it turns out to be wrong. The Commissioner defended it on the same grounds, though she conceded that Plaintiff's inability to the relevant limitation dealt with "repetitive" hand use. (Doc. 20 at 8-9.) Judge Borman remanded to allow the ALJ a chance to reconcile the "repetitive" restriction with the RFC. In other words, the ALJ needed to better articulate his opinion. And as Judge Borman noted, "this is a close case . . . ." (Doc. 20 at 8.)

The ambiguous relationship between the terms "repetitive" and "frequent" is well noted in the case law and provides further grounds for finding the Commissioner's position substantially justified. *See Spruil*, 691 F. Supp. at 306 (noting that clarity in the relevant law is important when

considering whether the defendant's position was substantially justified). "Frequent" has a specific meaning in disability cases. The Dictionary of Occupational Titles ("DOT") defines a frequent action as one that occurs between one-third and two-thirds of the time. DOT *Appendix C*, 1991 WL 688702 (4th ed. 1991) (including definitions of "frequent," "occasional," and "constant"). "Occasional" activities take place less than one-third of the workday, while "constant" ones occur more than two-thirds of the time. *Id.* DOT does not define "repetitive" use in this context, thus the term "has no universally acknowledged and understood analogue in the vocabulary of the DOT." *Dandreo v. Astrue*, No. 09-347-P-R, 2010 WL 207090, at *2 (D. Me. May 20, 2010) (Report & Recommendation).

In the face of this ambiguity, courts have taken different directions. Some have found that "there is at a minimum a facial ambiguity" concerning "whether a person restricted from repetitive fine manipulation can perform work requiring frequent fingering." *Id.* at *4. One court noted that the "inherent ambiguity in the term 'repetitive' requires an express definition to be certain of its connotation." *Dandreo v. Astrue*, No. 07-4913, 2008 WL 4091684, at *6 (E.D. Penn. Sept. 2, 2008) (Report & Recommendation); *see also Alexander v. Astrue*, No. 07-4913, 2008 WL 4091684, at *6 (E.D. Penn. Sept. 2, 2008) (Report & Recommendation) (same); *Williams v. Barnhart*, 424 F. Supp. 2d 796, 801-02 (E.D. Penn. Mar. 23, 2006) (noting that the VE seems to have interpreted "repetitive" to mean "frequent," but the court could not discern what the ALJ meant).

Others have found that the terms do not overlap or conflict but instead measure different aspects of hand use. *See Dandreo*, 2010 WL 207090, at *2 (describing these cases); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he frequent reaching and handling

requirements are not equivalent to repetitive use of the right hand."). The Ninth Circuit explained this interpretation: "[W]e note that 'repetitively' in this context appears to refer to a *qualitative* characteristic–i.e., *how often* one uses his hands, or *what type* of motion is required–whereas 'constantly' and 'frequently' seem to describe a *quantitative* characteristic–i.e., *how often* one uses his hands in a certain manner." *Gardner v. Astrue*, 257 F. App'x 28, 30 n.5 (9th Cir. 2007); *see also Victor v. Astrue*, No. CV 10-7674-PJW, 2011 WL 4829387, at *2 (C.D. Cal. Oct. 11, 2011) ("'Repetitive' is not synonymous with 'frequent.'"); *Harrington v. Astrue*, No. 1:06CV936, 2008 WL 819035, at *5 (M.D. N.C. Mar. 21, 2008) (Report & Recommendation) (noting that the term "repetitive" does not measure the same characteristics as "frequent," "constant", or "occasional"); *Sterling v. Astrue*, No. 07-1094, 2008 WL 45415, at *4 (D. Kan. Jan. 2, 2008) (adopting Report & Recommendation) ("[T]he court finds that the limitation on the ability to perform rapid, repetitive bilateral hand motions is not inconsistent with the job requirement that plaintiff be able to engage in frequent reaching and handling and occasional fingering.").

Still others find that the terms conflict. *See Boone v. Barnhart*, 353 F.3d 203, 207 (3d Cir. 2003) (noting that an RFC's limitation against "repetitive" hand activity "may preclude" frequent "reaching, handling, and fingering"); *Farris v. Astrue*, No. 08-0733-CV-W-REL-SSA, 2009 WL 3401153, at *13 (W.D. Mo. Oct. 20, 2009) ("More problematic, however, is the ALJ's finding that plaintiff can perform frequent handling without repetitive use of his hands."); *Davis v. Astrue*, No. 3:07cv00010, 2008 WL 2872214, at *4 (W.D. Va. July 24, 2008) (finding that the ALJ erred in accepting VE testimony when the VE did not explain why he offered job titles requiring "frequent" hand work in response to ALJ's hypothetical excluding "repetitive" hand work). The Sixth Circuit has not issued a definitive pronouncement on the issue, but one opinion suggests it believes the

20

terms conflict. The medical record in *Jeffries v. Commissioner of Social Security* indicated that the claimant could not repetitively use her hands. 23 F. App'x 351, 353 (6th Cir. 2001). The ALJ, however, found she could perform work requiring frequent reaching, handling, and fingering. *Id.*; *see also* DOT 249.362-010, *Counter Clerk*, 1991 WL 672316. The court found that the ALJ erred, since the evidence of her inability to perform "repetitive" actions demonstrated that she could not perform these jobs. *Jeffries*, 23 F. App'x at 353. The court did not expound on its conclusion, but seems to have implicitly rested its holding on the tension between "frequent" and "repetitive."

In certain cases, the VE or ALJ provided a specific definition of "repetitive," generally using it to refer to "constant" movements that occur over two-thirds of the workday. *See Gallegos v. Barnhart*, 99 F. App'x 222, 224-25 (10th Cir. 2004) (noting that "the VE expressly construed the term 'repetitive' to mean 'from two-thirds to 100 percent of the time'" (quotation omitted)); *Brown v. Astrue*, No. 1:10-CV-305, 2011 WL 2470232, at *6 (N.D. Ohio June 20, 2011) (Report & Recommendation) (noting that the hearing testimony implied that the VE used the term "'repetitive' to explain the quantity of fine manipulation"); *Bennett v. Barnhart*, 264 F. Supp. 2d 238, 259 (W.D. Penn. 2003) (discussing arm pushing and pulling, the VE interpreted "repetitive" to mean "'almost constant'" (quotation omitted)); *Gulo v. Barnhart*, No. 01 C 3040, 2002 WL 1880705, at *12 n.7 (N.D. Ill. Aug. 13, 2002) (noting that the VE testified that he equated "repetitive" with "constant").

This ambiguity suggests that the ALJ's failure to explicitly reconcile the terms here was reasonable. The oversight occurs often, generally stemming from unstated understandings of the term "repetitive." As Judge Borman wrote, the terms appear to conflict. That is, one who cannot do repetitive work seems unlikely able to do frequent tasks. Reconciling them may be possible,

however, and Judge Borman held out that possibility in his decision. For example, they may be congruous because the ALJ interpreted "repetitive" to mean something close to "constant." Alternatively, they may not conflict because "repetitive" provides an entirely different–"qualitative"–measure, in which case the ALJ erred on different grounds by ignoring this distinct connotation. *See, e.g.*, *Victor*, 2011 WL 4829387, at *1-2 (noting that the evidence showed the plaintiff had limitations on "repetitive" movements and that "repetitive" was "not synonymous with 'frequent," thus the RFC's limitation to "frequent" movements did not reflect the medical evidence); *Macapagal v. Astrue*, No. C07-03706, 2008 WL 4449580, at *2-4 (N.D. Cal. Sept. 29, 2008) (remanding where ALJ's hypothetical did not reflect distinction between the terms). Remand will allow him to navigate these various possibilities and further explain his reasoning. The difficulties he experienced the first time around are not uncommon, and the cases branch in different directions, which indicates his error was not unreasonable. Thus, I suggest the Commissioner was substantially justified.

### 4.   Amount of Fee

#### *a.   Arguments*

Most of the parties' briefs dispute the reasonableness of the fees. Plaintiff requests $11,074.86 in fees, rounding down to the nearest penny.[3] (Doc. 21 at Pg ID 809); (Doc. 25 at 18.)

---

[3] I find that the total hours (59.25) multiplied by the hourly rate ($187.02) equals a slightly higher number: $11,080.94, rounding up to the nearest penny. The variance comes from Randall E. Phillips fees. In the table with total hours by year, Mr. Phillips's fees include 6.75 total hours, consisting of 2.25 hours from 2013 and 4.50 hours from 2014. (Doc. 21 at Pg ID 809, 829.) The table calculates that the 2.25 hours of work in 2013 at $187.02 per hour equals $414.72. (*Id.*) I come up with $420.80.

The divergence is slight and its cause, harmless. The tables show Mr. Phillips worked 6.75 hours over 2013 and 2014; his line-item list shows the same number of hours, but states they occurred in 2012 and 2013. (*Id.* at Pg ID 811-12.) This is marginally relevant because Plaintiff requests a cost of living increase to justify his hourly rate. (*Id.* at Pg ID 830-31.) The 2013 and 2014 adjusted rates, according to Plaintiff, are both $187.02 an hour. (*Id.*) The

Plaintiff's application seeks an hourly rate of $187.02.[4] (*Id.*) As explained below, EAJA sets the hourly fee at $125 but allows increases for inflation if "justifie[d]." 28 U.S.C. § 2412(d)(2)(A). Plaintiff's initial application argues for a cost of living increase based on the Consumer Price Index ("CPI") for urban areas and the assertion, supported by two affidavits, that each of Plaintiff's three attorney's charges over $187.02 per hour for market work. (Doc. 21 at Pg ID 820, 823, 831.) Plaintiff adds that most of the work was spent on briefing, and all could have been properly billed to a client. (*Id.*)

Defendant considers this excessive. (Doc. 22 at 11-19.) Regarding the time requested, Defendant thinks that 43.65 hours are too many "in light of the number of unsuccessful arguments that Plaintiff raised and the repetitive nature of his pleadings." (*Id.* at 11.) Plaintiff's eight-page reply brief and her objections to the Report and Recommendation were just "abbreviated version[s] of her opening brief." (*Id.* at 12.) They do not merit 12.4 hours of pay, according to Defendant. (*Id.*) The Commissioner also finds six hours of "purely administrative tasks," such as docketing and receiving court filings. (*Id.* at 12.) These should not be compensated, nor should the forty-five minutes it took to file Plaintiff's motion for an extension. (*Id.* at 13.)

The rate is excessive as well, Defendant continues. (*Id.*) Citing Sixth and Seventh Circuit law, Defendant argues that Plaintiff's heavy reliance on the urban CPI, without more, cannot justify a cost of living increase. (*Id.* at 17.) Moreover, Plaintiff failed to explain why that index

---

2012 rate was $184.32. (*Id.*) His 2012 fees thus totaled $414.72, the amount the table attributes to 2013. The actual request seeks the correct amount, multiplying $184.32 by 2.25 hours.

[4] This does not include the 2.25 hours in 2012 mis-marked at the $187.02 rate but actually charged at the $184.32 rate.

accurately captured the inflation in this District. (*Id.* at 17-18.) She needed to demonstrate the requested rate was "in line with" the prevailing rates for similar work in this area. (*Id.*)

Accepting Defendant's argument, Plaintiff responds, would pare down the hours nearly to zero. (Doc. 25 at 6.) Reasonableness is the key criterion, Plaintiff explains. (*Id.* at 7.) If the bill matches market conditions and is not obviously padded, the courts should hesitate before scrutinizing its individual entries. (*Id.* (citing *Hardy v. Callahan*, No. 9:96-CV-257, 1997 WL 470355, at *8 (E.D. Tex. Aug. 11, 1997); *Stewart v. Sullivan*, 810 F. Supp 1102, 1107 (D. Haw. 1993)).) Further, Plaintiff rejects Defendant's argument that a court can award fees only for the fraction of Plaintiff's successful arguments. (*Id.* at 8.) Perhaps losses on disparate and collateral issues evade EAJA, but here Plaintiff asserts that the errors she raised were bundled in a unitary claim that cannot be reasonably carved apart into wins and losses. A remand, even on a narrow ground, is a sufficient victory; it is the "'excellent result[]'" claimants seek. (*Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).) Next, Plaintiff argues that her reply brief and objections did more than simply condense her first brief. (*Id.* at 10.)

Plaintiff then addresses Defendant's objections to specific entries on the fee request. (*Id.* at 12-13.) "[P]urely clerical activities may not be compensable," Plaintiff admits, but the items Defendant scoffs at were not bland, ministerial tasks. (*Id.*) In fact, they included preparing a complaint and reviewing court filings. (*Id.* at 12.) Case law also supports compensation for extension motions. (*Id.* at 12-13.)

Finally, Plaintiff augments her argument for a cost of living increase. (*Id.* at 13-18.) First, she adds affidavits from lawyers who have practiced in the area, along with a Michigan State Bar report listing typical hourly fees. (*Id.* at 13-14, Exs. 1-5.) Plaintiff then turns to Defendant's

24

reliance on *Mathews-Sheets v. Astrue*, a Seventh Circuit opinion that formulated demanding standards for justifying cost of living increases. 653 F.3d 560 (7th Cir. 2011). According to Plaintiff, that case does not represent this Circuit's law and should also be rejected on policy grounds. (*Id.* at 14-18.)

Defendant's sur reply gives her the last word. She questions, in a footnote, the appropriateness of Defendant's providing "additional evidence"–namely, the affidavits and Bar report–"for the first time in her reply brief." (Doc. 27 at 10 n.1.) In any case, Plaintiff then gives those affiants and the Bar study a thorough thrashing. (*Id.* at 10-14.) Citing evidence from another case, Defendant notes that the first affiant moved to Florida in December 2010. (*Id.* at 11.) The same evidence suggests that even when he practiced here, his role in the cases was limited, often serving as "local counsel" without "active interest" in the litigation.(*Id.*) Two of the other affiants did not mention Social Security work in their affidavits.(*Id.* at 13.) Likewise, the Bar report leaves out fees charged in this practice area.(*Id.* at 13-14.) Thus, the new evidence fails to establish the local rate for similar work.

Defendant then inserts a fat footnote with cases from across the country–only one from the Sixth Circuit–showing courts that have awarded fees for 20 to 54.5 hours of work for disability cases, the upper figure including time spent before the appeals court. (*Id.* at 16 n.2.) Plaintiff's request for fifty-nine hours is thus out of line. (*Id.* at 16-17.) In particular, Plaintiff's reply brief and objections raised the same arguments as the initial brief and took a disproportionate amount of time to craft. (*Id.* at 18.) Finally, Mr. Phillips 6.75 hours of work do not merit the attorney hourly rate. (*Id.* at 19.) He did not draft or research the core briefs during the case, instead only writing the complaint and a motion for extension. (*Id.*) The other items on his time sheet involved

reviewing new filings and orders on the docket and talking to the Plaintiff. (*Id.*) His involvement was tangential and never required his legal skills. (*Id.*)

     *b.*    *Governing Law*

Attorney's fees claimed under the EAJA must be reasonable. *Glass v. Secy' of Health & Human Servs.*, 822 F.2d 19, 21 (6th Cir. 1987). As the Supreme Court noted in *Hensley v. Eckerhart*, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. In *Glass*, the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee." 822 F.2d at 21. The statutory hourly maximum is $125.00, "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

     *c.*    *Analysis*

I address Plaintiff's two arguments in turn. First, the total number of hours Plaintiff requests is high but reasonable. Defendant suggests that the Court lop off the hours Plaintiff toiled on losing arguments. Defendant never articulates a framework for applying this argument. Instead, he cites a few cases to establish, "[a]s a general matter," that Plaintiff's should not receive fees for litigating unsuccessful claims. (Doc. 22 at 11.) This statement nicely paraphrases the first case she cites, except it leaves off a notable qualification:

> However, it sometimes will be the case that a lawsuit will seek recovery under a variety of legal theories complaining of essentially the same injury. A district judge

must take care not to reduce a fee award arbitrarily simply because a plaintiff did not
prevail under one or more of these legal theories.

*Copeland v. Marshall*, 641 F.2d 880, 892 n.18 (D.C. Cir. 1980). In the two Sixth Circuit cases

Defendant cites, the plaintiffs' wins were unrelated to their losses, allowing the court to separate

them when awarding fees. For example, in *Willis v. Sullivan*, 931 F.2d 390, 401-02 (6th Cir. 1991),

the court denied fees for time spent on two separate, losing motions the plaintiff filed during the

litigation–one was a request to avoid a windfall offset provision, the other was a motion for

contempt. These "collateral and discrete issues" were separable from the core claims on which the

plaintiff prevailed. *Id.* As the Supreme Court has noted under a similar statute, a plaintiff may not

be entitled to fees on claims she loses, so long as those claims have "distinctly different" bases in

fact and law from the claims she wins. *Hensley*, 561 U.S. at 434. The Court thought such cases

containing sufficiently unrelated claims were "unlikely to arise with great frequency." *Id.* at 435.

    Here, Plaintiff pressed one overarching claim seeking remand or immediate award of

benefits. (Doc. 1.) She succeeded. (Doc. 21.) In the process, she developed a few related legal

issues all aimed at showing she was disabled. The Commissioner provides no discussion of how

Plaintiff's arguments that won are unrelated to the arguments that lost. Nor does the Commissioner

offer any suggestions on how the court should reduce the fees for these losing arguments. Judge

Borman found five contentions in the Plaintiff's objections. Plaintiff prevailed in two. Should the

court treat this as a forty-percent win rate and use it to reduce the fee accordingly? Should it be

read back throughout the entire case, or just the brief-writing portions? Or perhaps the winning

arguments took more time and thought to craft? Defendant's argument is underdeveloped and

unconvincing.

27

Moreover, none of the fees Plaintiff requested come from any ancillary or unrelated claims, such as a separate motion for contempt. *Cf. Willis*, 931 F.2d at 401-02. Defendant objects to awarding fees for Plaintiff's extension motion (Doc. 22 at 13), but Plaintiff was successful on that point. (Doc. 11), and courts have granted fees for these motions where they are not repetitive, the hours spent on them are minimal, and there is no evidence of dilatory intent. *See, e.g.*, *Karns v. Astrue*, No. 3:10cv00318, 2012 WL 1185990, at *4 (S.D. Ohio Apr. 9, 2012), *Report & Recommendation adopted by* 2012 WL 1463546, at *1 (S.D. Ohio Apr. 27, 2012); *McNelis*, No. 08-12529, 2010 WL 5866250, at *3 (E.D. Mich. Oct. 20, 2010), *Report & Recommendation adopted with modification by* 2011 WL 743393, at *1-3 (E.D. Mich. Feb. 23, 2011); *Young v. Comm'r of Soc. Sec.*, No. 08-14475, 2010 WL 4608686, at *2 (E.D. Mich. Nov. 4, 2010); *Zanon v. Comm'r of Soc. Sec.*, No. 08-15337, at *3 (E.D. Mich. Apr. 15, 2010); *Samuel v. Barnhart*, 316 F. Supp. 2d 768, 779-780 (E.D. Wis. 2004). *Cf. Newell v. Astrue*, No. 3:07CV00412, 2012 WL 936672, at *4 (S.D. Ohio Mar. 20, 2012) (finding 1.25 hours unreasonable where, it appears, the plaintiff filed multiple requests), *Report & Recommendation adopted by* 2012 WL 1185991, at *1 (S.D. Ohio Apr. 9, 2012). Though a few courts have, seemingly as a matter of course, rejected fees for filing extension motions, *see Ralston v. Astrue*, No. 09-cv-14790, 2011 WL 7299836, at *6 (E.D. Mich. Aug. 30, 2011), *Report & Recommendation adopted by* 2012 WL 479831, at *1 (E.D. Mich. Feb. 14, 2012), Plaintiff here spent a reasonable amount of time on the motion and no obvious dilatory purpose. Therefore, it should be included in her compensable fees.

Defendant also thinks that the 12.4 hours Plaintiff spent on her reply (Doc. 17) and objections (Doc. 19) was too long. This argument fails to persuade. Plaintiff spent six hours on each brief, roughly a long afternoon's worth of work. In that time, Plaintiff managed to find new

case law, respond to specific objections, and craft an argument that ultimately merited remand. Defendant offers a groundless claim that Plaintiff did "not . . . cite[] new case law or . . . identif[y] other legal authority aside from the cases and regulations referenced in her opening brief." (Doc. 22 at 12.) Plaintiff answers with a helpful chart comparing the authorities cited in her initial brief with those from the reply and objections; she cited more new cases in the latter two filings than she did in her first brief. (Doc. 25 at 10.) These new cases were cited carefully and responded to Defendant's arguments, thus the chart is a useful proxy for gauging Plaintiff's efforts. Additionally, the reply and objections were not any more reiterative than necessary. They addressed specific matters from Defendant's arguments and the Report and Recommendation. I see no basis for discounting these hours

Nor does Defendant provide a solid reason to reduce Mr. Phillips hours. (Doc. 22 at 13); (Doc. 27 at 19.) Mr. Phillips seems to serve as local counsel for Plaintiff, spending only 6.75 hours on the case and not drafting any of the briefs. (Doc. 21 at Pg ID 811-12.) Local Rule 83.20(f) requires local counsel to participate in cases by attending hearings and wielding authority to conduct the litigation. This requires, at the very least, that the attorney stay current with the proceedings. Defendant draws the court's attention to a hearing in another case where one of the present affiants was criticized by the court for lackluster effort in his role as local counsel. (Doc. 27 at 11 (citing Transcript of Order to Show Cause Hearing *DiMarzio v. Comm'r of Soc. Sec.*, No. 11-15635 (E.D. Mich. Dec. 11, 2012)).) Defendant discusses this episode to diminish the affiant's credibility, but it also sheds light on her argument regarding Mr. Phillips. The affiant there explained that "there really . . . aren't things that local counsel do" in Social Security cases, so he had not paid much attention to the case. Transcript, *supra* at 16. The court thought that this, along

29

with other factors, deprived the claimant of proper representation. Consequently, he was removed from the case. *Id.* at 24, 43. Thus, local counsel must remain active in order to fulfill their professional duties and comply with the Local Rules.

Defendant here seeks to undercut the affiant for not making any efforts as local counsel in other cases, while at the same time criticizing Mr. Phillips for spending too much time as local counsel in this one. Mr. Phillips's bill, however, shows his prudent involvement in the case and that he could step in to lead the litigation if needed. He drafted the complaint and the motion for extension, reviewed filings, and corresponded with Plaintiff. (Doc. 21 at Pf ID 811-12.) Defendant argues that these tasks do not require legal skill and should not merit a full rate. (Doc. 22 at 13); (Doc. 27 at 19.) While they may not be the most difficult tasks a lawyer faces, they reflect legal training and are properly considered legal work. *See Gunther v. Comm'r of Soc. Sec.*, 943 F. Supp. 2d 797, 805 (N.D. Ohio 2013) (adopting Report & Recommendation) (noting that "monitoring the docket, filing/editing briefs, and preparing the complaint" was "work traditionally performed by attorneys," though performed in this case by an assistant). Therefore, Mr. Phillips request is reasonable.

Plaintiff's overall request of almost sixty hours is slightly high, but does not appear to be an outlier. The Sixth Circuit has found that "twenty to thirty hours may well be the norm," but the court must consider each case's particular requirements. *Glass v. Sec'y of Health & Human Servs.*, 822 F.2d 19, 20 (6th Cir. 1987). These factors include, among others, the complexity of the issues and the attorney's experience. *Id.* at 21. Using this framework, some courts find that forty hours generally represents the "'outer limits' of a reasonable amount of time . . . ." *Crooks*, 2014 WL 3400697, at *8 (including hours spent on EAJA reply brief; quoting *Coates v. Colvin*, No. 12-cv-

13900, 2014 WL 1389328, at *4 (E.D. Mich. Apr. 9, 2014)). Even where the issues are not complex or the record long, a Plaintiff's thorough analysis of "a multitude of errors" can justify extra hours of work. *McNelis*, 2010 WL 5866250, at *3. Thus, the forty-hour figure is a rule of thumb and many courts have granted fee requests that exceed it. *See Coates*, 2014 WL 1389328, at *5 (finding 49 hours reasonable); *Grooms v. Comm'r of Soc. Sec.*, No. 2:08-14189, 2011 WL 4536886, at *2-3 (E.D. Mich. Sept. 30, 2011) (holding that 62.65 hours were reasonably requested); *McNelis*, 2010 WL 5866250, at *3 (finding 64.55 hours reasonable).

Here, the factors justify the full number of hours requested. Plaintiff's counsel on the summary judgment brief has extensive experience in this field. (Doc. 21 at Pg ID 815-20.) Though the underlying issues were not exceedingly complex and the record was of average length, Plaintiff's counsel highlighted numerous, specific areas of contention and offered detailed arguments. The briefs were well organized and included helpful graphs and abundant citations to the record. Moreover, Plaintiff's arguments on the EAJA presaged developments in two disputed areas: the Sixth Circuit reversed one case Defendant relied on, *Glenn*, 2013 WL 5587605, *rev'd* 763 F.3d 494, and the Seventh Circuit panel overruled the relevant standard used in a decision Defendant cited extensively, *Sprinkle v. Colvin*, –F.3d–, 2015 WL 301182, at *6 & n.1 (7th Cir. 2015) (overruling standard from *Mathews-Sheets*, 653 F.3d 560). Plaintiff's reasoning came out on the right side of each dispute. This further justifies the hours Plaintiff expended on the reply.

The briefs were well argued, Plaintiff's counsel is experienced, the EAJA arguments included somewhat complex matters, and the case law does not indicate that sixty hours is anomalous. Therefore, I recommend finding that Plaintiff has established a reasonable number of hours.

Plaintiff's requested rate is also reasonable.[5] Defendant relies heavily on *Mathews-Sheets v. Astrue*, 653 F.3d 560, a Seventh Circuit decision that required a potentially complex and burdensome showing that the lawyer's costs had increased or, in the alternative, that competent representation in the jurisdiction could not be found for less than the requested fee rate. *See Sprinkle*, 2015 WL 301182, at *3-4. After nearly four years, this proved to be an unworkable standard. *Id.* The Seventh Circuit recently rejected it, stating that "EAJA claimants should not be required to prove the effect of inflation on their individual attorney's costs in order for a judge to find that an increase in the cost of living justifies a higher fee." *Id.* Instead, the CPI properly captured inflation and could justify an increased award if accompanied with affidavits from local lawyers or similar evidence. *Id.* at 6-7.

This shift moved Seventh Circuit law closer to the Sixth's, which Defendant does not entirely overlook but under-emphasizes in her quest to employ the more rigorous *Mathews-Sheets* rule. (Doc. 22 at 15-17); (Doc. 27 at 14-15.) In this Circuit, a claimant cannot rely on the CPI alone to win a cost of living increase. *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009) But the burden to produce additional evidence is not insurmountable. *See Vock v. Comm'r of Soc. Sec.*, No. 13-cv-12753, 2014 WL 6974663, at *5 (E.D. Mich. Dec. 9, 2014) ("Plaintiff's burden

---

[5] Concerning Defendant's footnoted argument–which she never calls a waiver argument, but seems to be one in substance–I suggest that Plaintiff's evidence submitted with the reply brief is properly before the Court. (Doc. 27 at 10.) Defendant suggests Plaintiff needed to proffer it with her initial brief. The case Defendant most directly relies on remarked, in a footnote, that in light of *Mathews-Sheets*, the evidence of inflation should be submitted with initial fee petitions. *Cummings v. Astrue*, No. 1:11-cv-858, 2013 WL 1840410, at *2 n.2 (S.D. Ind. May 1, 2013). The court's comment does not support rejecting the evidence here. First, the court nonetheless considered that evidence and found it sufficient to increase the fee. *Id.* at 2. Second, it cited no cases other than *Mathews-Sheets* for support. In *Mathews-Sheets*, however, the plaintiff did not even explain the basis for her request for a fee increase until her reply brief. 653 F.3d at 564-65. The court found that the waiver rule did not apply because the government's response brief "said he was asking for too much. This opened the way for him to reply that it wasn't too much because [of] inflation . . . ." *Id.* at 563. Here, Plaintiff merely supplemented the evidence supporting her first brief and the Court may consider this new evidence.

of showing that the amount requested is in line with local market rates 'is quite easily accomplished by filing an affidavit from a local attorney who routinely handles these types of cases' . . . ." (quoting *Shumaker v. Comm'r of Soc. Sec.*, No. 1:11cv2801, 2013 WL 6501300, at *3 (N.D. Ohio Dec. 11, 2013))).

Most courts in this Circuit accept the same types of evidence as Plaintiff submits, such as attorney affidavits, the 2010 Bar study, and the urban CPI; in fact, Plaintiff uses one of the same affiants from those cases. *See Pizzo v. Comm'r of Soc. Sec.*, No. 13-CV-11344, at 2014 WL 7157129, at *5 (E.D. Mich. Dec. 15, 2014) (adopting Report & Recommendation) ("Case law in this District supports such an increase based only on the Michigan [Bar Study of] 2010 Economics of Law Practice Survey, in addition to an affidavit from the plaintiff's attorney and the CPI."); *Martin v. Comm'r of Soc. Sec.*, No. 12-14773, 2014 WL 7139991, at *2 (E.D. Mich. Dec. 12, 2014) (finding that fee increase was justified by CPI and affidavits, including one from Evan Zagoria, an affiant in the present case, who attested to the "special factor" of a lack of qualified local attorneys); *McClure v. Comm'r of Soc. Sec.*, No. 13-12599, 2014 WL 4801830, at *3 (E.D. Mich. Sept. 23, 2014) (adopting Report & Recommendation) (increasing fee where Plaintiff cited the CPI and attorney offered affidavit);*Crooks*, 2014 WL 3400697, at *6 (increasing fee where Plaintiff offered CPI evidence and affidavits, including one from Mr. Zagoria); *Poholski v. Comm'r of Soc. Sec.*, No. 1:12-CV-1414, 2014 WL 1775688, at *2 (W.D. Mich. May 5, 2014) (noting that Plaintiff offered affidavits from local counsel, the CPI, and the 2010 Bar study); *Darling v. Comm'r of Soc. Sec.*, No. 10-CV-15082, 2012 WL 4759203, at *2-3 (E.D. Mich. Oct. 5, 2012) (allowing increase where Plaintiff offered affidavits from local individuals familiar with

33

the practice area, including one from Mr. Zagoria); *Allshouse*, 2009 WL 4884968, at *6-7 (allowing increase where plaintiff provided urban CPI and 2007 Michigan Bar study).

While the $187.02 Plaintiff requests appears at the upper range of what courts have awarded, this result is at least partly a normal consequence of progressive inflation rather than Plaintiff's overreaching. In other words, fees awarded in earlier cases would naturally be lower. In any case, the request is not substantially above those cases. *See McClure*, 2014 WL 4801830, at *3 (finding $187.13 was reasonable rate); *Martin*, 2014 WL 7139991, at *2 ($181.60 per hour for 2013 work, $184.50 for 2014 work); *Crooks*, 2014 WL 3400697, at *6 ($181.75 per hour for work done in 2013); *Poholski*, 2014 WL 1775688, at *2 ($181.63 per hour for work in 2013); *Phillips v. Comm'r of Soc. Sec.*, No. 12-10016, 2013 WL 5313200, at * (finding $173.00 per hour reasonable); *Lewandowski-Farr v. Comm'r of Soc. Sec.*, No. 12-cv-12753, 2013 WL 3328495, at *2 (E.D. Mich. July 2, 2013) (adopting Report & Recommendation) ($178 per hour); *Darling*, 2012 WL 4759203, at *3 ($170.00 per hour)*; Zanon v. Comm'r of Soc. Sec.*, No. 08-15337, 2010 WL 1524143, at *4 (E.D. Mich. Apr. 15, 2010) ($170.00 per hour); *Allshouse*, 2009 WL 4884968, at *7-8 (awarding $172.50 per hour); *Fauss-Miller v. Comm'r of Soc. Sec.*, No. 06-12079, 2008 WL 241532, at *3 (E.D. Mich. June 12, 2008) (adopting Report & Recommendation) ( $156.75 per hour). The Sixth Circuit recently suggested that an award of slightly over $170 an hour for work in 2012 and 2013 would be reasonable. *See Glenn*, 763 F.3d at 497 n.3.

The cases to the contrary cited by Plaintiff involved significant flaws in the evidence. (Doc. 27 at 14.) In *Gay v. Colvin*, the court rejected an increase where the Plaintiff cited inflation rates in the wrong location–Chicago, rather than this District. No. 11-cv-10771, 2013 WL 4604177, at *4 (E.D. Mich. Aug. 29, 2013). Plaintiff here does not make that mistake. Additionally, in *Grooms*

34

*v. Commissioner of Social Security*, the plaintiff provided two types of insufficient evidence. 2011 WL 4536886, at *3-4. First, she gave the court affidavits suggesting that there was a "lack of [local] available counsel who are willing to represent clients in Social Security cases." *Id.* at *3.The court rejected this, noting that the "paucity" of available attorneys "does not fall within the interpretation of the statute by the Supreme Court." *Id.* at *4. This left the claimant with a citation to the CPI, which alone cannot carry the day in this Circuit. *Id.* Here, Plaintiff does not rely on the CPI without more.

Finally, Defendant's specific objections to the evidence fail to persuade. (Doc. 27 at 11-14.) The Commissioner goes after one affiant, Evan Zagoria, who stopped practicing in Michigan in 2010 and, even when here, was often "local counsel," not handling the actual litigation in his cases. (*Id.* at 11-12.) Similar arguments against Mr. Zagoria have appeared elsewhere. *See Pizzo*, 2014 WL 7157129, at *4-7. In *Pizzo*, the court said his 2010 attestation was stale; however, the affidavit addressed a "special factor"–the lack of local counsel–justifying fee bumps, not inflation. *Id.* Nevertheless, the court adjusted the fee for inflation and awarded $187.02 an hour. *Id.* Other courts have accepted his affidavit. *See Martin*, 2014 WL 7139991, at *2 (citing *Darling*, 2012 WL 4759203, at *2).

Here, the affidavit is dated 2014 and deals with the prevailing fee rate as well as the availability of competent attorneys. (Doc. 25 at Pg ID 879-81.) He states that the "market rate for the kind and quality of services in the Detroit area is greater than or equal to . . . $187 an hour." (Doc. 25 at Pg ID 880.) There may be a subtle difference between using an affidavit from Mr. Zagoria to show cost of living increases and, as in *Pizzo*, to demonstrate the available pool of lawyers. In the former case, the affidavit can at least give a sense of the prevailing market rate up

35

to the end of 2010, when he last practiced here; prices do not seem to have dropped since. The supply of lawyers is less inelastic, though certainly it does not wildly fluctuate. His last exposure to the District was four years ago and the complexion of the supply may have changed.

Similarly, Defendant's implication that Mr. Zagoria may have been inattentive as local counsel does not suggest Mr. Zagoria knew little about wage rates. And he was not always local counsel but also successfully handled Social Security cases in this District without co-counsel, even winning fee awards. *See Fauss-Miller*, 2008 WL 2415432, at *2. Alone, the affidavit might not persuade. But Plaintiff provides other evidence corroborating it and, together, establishing the cost increase.

For the same reasons, Defendant objects the other affidavits. (Doc. 27 at 13.) Ms. Blaise Repasky and Mr. David Sims, both local attorneys, attested that their fee rates exceed $187.00 per hour. (Doc. 25 at Pg ID 882-83.) Neither seem to have a Social Security practice, however, casting doubt on the usefulness of this evidence. *See Pizzo*, 2014 WL 7157129, at *6 n.3 ("Plaintiff also attached three other affidavits from local attorneys attesting to their hourly rates. . . . However, these attorneys do not state that they practice Social Security disability law, and thus their hourly rates are not relevant to this decision."). However, the same case rejecting these affidavits noted that an increase could be "based only on the Michigan 2010" Bar study, the plaintiff's attorney's affidavit, and the CPI. *Id.* at 5. Plaintiff here supplies all of this. *Id.* at 5. Yet, the Bar study does not contain rates for Social Security practice in this District–the information for Wayne County's hourly rates in public benefits practice is blank. (Doc. 25, Ex. 5 at Pg ID 939.)

Nonetheless, the information in the study and the affidavits is at least tangentially related to cost of living increases. Many of the costs in a practice would not likely vary based on the

specific field; Wal-Mart probably does not charge more for staples to environmental lawyers than they do Social Security practioners. To an the extent the costs differ, it may reflect confounding variables, such as firm size. *See generally* Federal Judicial Ctr, *Reference Manual on Scientific Evidence*, 262-64 (3d ed. 2011) (discussing confounding variables). These confounding variables may have different effects among different fields; that is, corporate lawyers may be more likely than civil rights lawyers to practice in large firms that can exert more downward price pressure on suppliers. So cost increases may not affect all fields in the same manner. In any case, general cost of living increases eat away at the purchasing power of a dollar for all attorneys alike; thus the affidavits provide some measure of a local attorney's cost of business. *See Greene v. Comm'r of Soc. Sec.*, No. 3:11 CV 1333, 2013 WL 617272, at *2 (N.D. Ohio Feb. 19, 2013). But this series of speculations pushes the Court well past what the evidence bears. The affidavits and Bar study indicate increased costs for local lawyers. This provides sufficient evidence, along with the Plaintiff's attorneys' affidavits, (*Id.* at Pg ID 877-78; Doc. 21 at Pg ID 815-20, 823), that Plaintiff's request is reasonable. *See Pizzo*, 2014 WL 7157129, at *5.

### D.   Conclusion

Therefore, I suggest that the Commissioner was substantially justified and that fees should not be awarded. However, if the Court finds the Commissioner was not substantially justified, Plaintiff's fee request was reasonable.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another

party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 26, 2015          S/ PATRICIA T. MORRIS
                                  Patricia T. Morris
                                  United States Magistrate Judge